IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| DMITRY FASOLYAK, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-06-622 |
| THE CRADLE SOCIETY, INC., | * | |
| Defendant. | * | |

\* \* \* \* \*

## REVISED MEMORANDUM OPINION

This action involves a suit brought by Dmitry Fasolyak ("Fasolyak" or "Plaintiff") against The Cradle Society, Inc., ("The Cradle Society" or "Defendant") for breach of contract, fraud and deceit, negligent misrepresentation, unjust enrichment, *quantum meruit*, tortious interference with prospective economic advantage, and an accounting. Currently pending before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction [3]. The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motion. No hearing is deemed necessary. See Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will grant Defendant's Motion to Dismiss and transfer the action to the Northern District of Illinois.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the non-movant. Fasolyak, a resident of Maryland, is in the business of facilitating lawful adoptions of infants and children from the Russian Federation by providing advisory, consulting, management, and administrative services. The Cradle Society is a not for profit corporation organized under the laws of the State of Illinois

1

and has its principal place of business in Evanston, Illinois. The Cradle Society is an adoption agency that arranges lawful adoptions of infants and children by families residing in the United States of America.

In 2003, The Cradle Society asked Fasolyak to establish an adoption program in the Russian Federation, through which The Cradle Society would arrange and facilitate adoptions of infants and children from the Russian Federation by families from the United States ("the Russian Program"). Fasolyak agreed and began setting up the Russian Program and providing The Cradle Society with services related to that program.

In early 2004, The Cradle Society prepared a formal written agreement defining the services Fasolyak would perform for The Cradle Society ("the Agreement"). The Cradle Society prepared the Agreement and mailed it to Fasolyak in Maryland where he subsequently signed it and mailed it back to The Cradle Society in Illinois. The Agreement became effective on January 1, 2004.

To help Fasolyak to perform his duties, The Cradle Society would send information and materials about adoptions to Fasolyak at his offices in Montgomery County, Maryland. Fasolyak would then communicate with The Cradle Society officials in Russia and prospective adoptive families from his offices in Maryland.

The Agreement calls for The Cradle Society to have an office in Moscow, Russia. The expenses necessary to operate the Moscow office would be determined through a budget submitted by The Cradle Society to Fasolyak each month. Fasolyak would then pay the expenses necessary to operate the Moscow office. In return, the parties agreed that The Cradle Society would require each prospective adoptive family to pay Fasolyak a specified fee, originally set at US $16,500.00 ("Russian Fee"). Later, by mutual agreement, the Russian Fee was increased to US $18,500.00. The

Russian Fee was payable by check or money to Fasolyak and/or other persons or places that Fasolyak directed.

In late 2004 and early 2005, the Russian government suspended accreditations of U.S. adoption agencies working in the Russian Federation, including The Cradle Society. While The Cradle Society's accreditation was suspended, The Cradle Society assured Fasolyak that it would continue to use his services if it was re-accredited by the appropriate Russian authorities. Throughout the period The Cradle Society's accreditation was suspended in Russia, Fasolyak continued to promote and pay for the expenses of the Russian Program.

On or around February 23, 2005, The Cradle Society agreed to pay fifty percent of the salaries of the key employees of the Moscow office. Starting on April 1, 2005, The Cradle Society agreed to pay fifty percent of the office rent for the Moscow office. The Cradle Society estimated that its share of the salaries and rent equaled about US $1,400.00 per month. Fasolyak continued to pay the remaining expenses.

Starting in July 2005, The Cradle Society stopped giving or referring new adoption cases to Fasolyak. Also, in July, The Cradle Society ceased making payments on the Russian Fees for new cases. Since July, The Cradle Society referred only one new case to Fasolyak. Fasolyak alleges that The Cradle Society retained the Russian Fees or forwarded them directly to the staff of the Moscow office. In or around September, Fasolyak requested that The Cradle Society replace the head of its Moscow office, a request The Cradle Society refused. The Cradle Society was re-accredited in September 2005, and resumed arranging adoptions in the Russian Federation.

During this period the expenses and salaries of the Moscow office increased without the consent of Fasolyak. The Cradle Society also did not send Fasolyak information about the books and

records of the Moscow office. Meanwhile, The Cradle Society continued to request that Fasolyak pay the increased costs, expenses, and salaries of the Moscow office. On or around February 9, 2006, The Cradle Society issued an invoice to Fasolyak for the expenses for the Moscow office for the months of October, November, and December 2005, as well as January, and February 2006. The invoice was for US $51,811.00 (about US $10,000 per month during that period). Previously, the expenses for the Moscow office usually did not exceed US $4,000 per month.

Fasolyak alleges that The Cradle Society and its staff began making defamatory statements about Fasolyak in 2005 and 2006. Fasolyak complained about the statements to The Cradle Society's executive director during a meeting in Washington, D.C., in December 2005. Specifically, Fasolyak claims that the head of The Cradle Society's Moscow office told some of the Defendant's regional coordinators and other third parties in Russia that Fasolyak is a dishonest man, that he cheats and deceives everyone, that Fasolyak cheats people out of money they earned, and that he personally deceived her. Finally, Fasolyak claims that The Cradle Society stated to third parties in 2005 and 2006 that the Agreement between Fasolyak and The Cradle Society would be or had been terminated without notifying Fasolyak.

On March 9, 2006, Fasolyak filed this diversity suit in federal court against The Cradle Society asserting claims for breach of contract, fraud and deceit, negligent misrepresentation, unjust enrichment, *quantum meruit*, tortious interference with prospective economic advantage, and an accounting. The Cradle Society moved to dismiss this action for lack of personal jurisdiction on April 13, 2006. The Cradle Society's Motion to Dismiss is pending and ripe for disposition.

## STANDARD OF REVIEW

Under the Federal Rule of Civil Procedure 12(b)(2), the party asserting personal jurisdiction

has the burden to prove the existence of a ground for jurisdiction by a preponderance of the evidence. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). If the court does not conduct an evidentiary hearing, the plaintiff need only "make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Id.; Mun. Mortgage & Equity, L.L.C. v. Southfork Apartments Ltd. P'ship, 93 F. Supp. 2d. 622, 626 (D. Md. 2000). In making its determination, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs, 886 F.2d at 676.

## DISCUSSION

A federal district court may only exercise jurisdiction over a non-resident defendant in the manner and extent authorized by state law in the forum state unless a federal statute establishes an alternative basis for exercising personal jurisdiction. See Fed. R. Civ. P. 4(k); ePlus Tech. v. Aboud, 313 F.3d 166, 175 (4th Cir. 2002). In a diversity case, a federal court only has personal jurisdiction over a party if a state court in the federal court's forum state would have personal jurisdiction. Copiers Typewriters Calculators, Inc. v. Toshiba, 576 F. Supp. 312, 318 (D. Md. 1983). To evaluate whether personal jurisdiction exists in a diversity case, a federal court will engage in a two-part analysis. First, the court will determine whether the forum state's long-arm statute authorizes the exercise of jurisdiction in the particular circumstances. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993) (citing English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990)). Second, if the court finds that the long-arm statute permits the court to exercise jurisdiction, it must consider whether such an exercise of jurisdiction comports with the Due Process standards of the Fourteenth Amendment. Id.

I. Maryland Law on In Personam Jurisdiction

Because Plaintiff filed this action in federal court in Maryland, this Court must first examine whether it may exercise personal jurisdiction over Defendant under Maryland law. Maryland's long-arm statute provides, in pertinent part:

> (b) A court my exercise personal jurisdiction over a person, who directly or by an agent:
> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
> (3) Causes tortious injury in the State by an act or omission in the State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, services, or manufactured products used or consumed in the State…

Md. Code Ann., Cts. & Jud. Proc § 6-103(b) (2005). Courts have interpreted Maryland's long-arm statute as coterminous with the limits of the Due Process Clause of the Fourteenth Amendment. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 710 (4th Cir. 2002). Therefore, "the statutory inquiry necessarily merges with the constitutional inquiry and the two inquiries become one." Id.

The exercise of personal jurisdiction over a non-resident defendant comports with the Due Process Clause only where the defendant has certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted); Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 941-42 (4th Cir. 1994). The jurisprudence of minimum contacts developed to determine whether a defendant had a surrogate

presence in the state. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997). Where a defendant purposefully availed himself of the privilege of conducting business in a particular forum, the defendant has sought the benefits and protections of that state's law. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). In such situations, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Id.; see also Foster v. Arletty 3 Sarl, 278 F.3d 409, 415 (4th Cir. 2002).

In considering the question of personal jurisdiction, the Supreme Court has drawn a distinction between "specific" and "general" jurisdiction. See Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414 (1984). Specific jurisdiction exists where a suit "arises out of" a defendant's contacts with the forum state. Id. General jurisdiction, which permits a court to subject a non-resident defendant to a suit in the forum wholly unrelated to any contact it has with the forum, exists only where a foreign defendant's in-state activities amount to "continuous and systematic" contact with the state. Id. at 414-15. The level of contact required for the exercise of general jurisdiction is significantly higher than that required for specific jurisdiction. See ESAB Group, Inc., 126 F.3d at 628.

The parties acknowledge that Plaintiff's claims against The Cradle Society could only "arise out of" The Cradle Society's activities within Maryland. Therefore, the Court will examine the specific nature of The Cradle Society's contacts with Maryland and assess whether The Cradle Society has certain minimum contacts with Maryland that would justify this Court exercising jurisdiction over this foreign corporation.

Plaintiff asserts that because he performed a substantial portion of his duties under the Agreement in Maryland, this Court has jurisdiction over Defendant. Pl.'s Mem. 6. To determine the

"place of performance," courts have looked where most of the contract obligations are to be performed. See Equitable Trust Co. v. Bratwursthaus Management Corp., 514 F.2d 565, 567 (4th Cir. 1975). The circumstances of this case points toward Russia, not Maryland, as the place of performance. Although, Plaintiff probably made payments from an account in Maryland, the payments were used to buy goods and services in Russia, and Plaintiff was contracted to provide advice and assistance in adopting children from Russia. Furthermore, the Defendant's duties and alleged wrongdoing relate to actions in Russia: submitting expense reports, making defamatory statements, and personnel choices. Considering that the place of performance for this contract was in Russia, Maryland courts would not automatically have personal jurisdiction over Defendant.

Plaintiff alleges that Defendant has substantial contacts with Maryland because Defendant performed the contract to a substantial degree in Maryland. Plaintiff claims that because Defendant sent letters, emails, and called the Plaintiff on the phone in Maryland, Defendant acted in Maryland. Pl.'s Mem. 7-8. However, an out-of-state resident sending letters or calling a resident of Maryland does not constitute an act that will allow Maryland courts to exercise jurisdiction over the out-of-state defendant. See Stover v. O'Connell Associates, Inc., 84 F.3d 132, 137 (4th Cir. 1996); Craig v. General Fin. Corp. of Ill., 504 F. Supp. 1033, 1037 (D. Md. 1980). Furthermore, sending emails or other electronic communication cannot serve as a basis for extending jurisdiction over an out-of-state defendant. Such a rule would eliminate all the protection of the Due Process clause and subject a defendant to the jurisdiction of almost any state in the country. See ALS Scan, Inc. v. Digital Services Consultants, Inc., 293 F.3d 707 (4th Cir. 2002); Hanson v. Denckla, 357 U.S. 235, 250-51 (1958).

Plaintiff also alleges that the Plaintiff and Defendant had multiple meetings in Maryland that

show Defendant has sufficient contacts with Maryland to be sued in Maryland. Pl.'s Mem. 7. Plaintiff also reminds the Court that the Court must construe all allegations in the light most favorable to the plaintiff. See Combs, 886 F.2d at 676. However, the burden of proving whether the Defendant was present in Maryland is not met simply by alleging that the Plaintiff had a meeting with the Defendant in Maryland. When a defendant challenges personal jurisdiction, the plaintiff has the burden of proving jurisdiction is proper with competent proof. See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Malinow v. Eberly, 322 F. Supp. 594, 600 (D. Md. 1971). Besides the Plaintiff's sworn affidavit which contradicts the allegations in the Complaint, Plaintiff has not supplied the Court with any documentation or evidence to bolster the claim that he and members of the Defendant's organization had a meeting in the State of Maryland.[1] Therefore, Plaintiff has not proved to a sufficient degree that Defendant was ever in the State of Maryland.

Plaintiff argues that because he took preliminary steps for the execution of the contract in Maryland, Maryland courts should have jurisdiction over Defendant. Pl.'s Mem. 8-10. Plaintiff cites Du-Al Corp. v. Rudolph Beaver Inc., 540 F.2d 1230, 1232 (4th Cir. 1976), to support the proposition that Maryland courts should assert jurisdiction over an out-of-state defendant "if the party has performed 'purposeful acts' in Maryland 'in relation to the contract, albeit preliminary or subsequent to its execution.'" First, the passage Plaintiff cites explains if an out-of-state party performs

---

[1] The allegation that Defendant met with Plaintiff in Maryland is suspect because of the seemingly contradictory nature of Plaintiff's Complaint and subsequent replies. In Plaintiff's original Complaint, Plaintiff did not mention any meetings in Maryland, only a meeting in Washington, D.C. Later, in Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss did Plaintiff first claim Defendant met with Plaintiff in Maryland. Recently, Plaintiff improperly submitted a surreply in violation of D. Md. Loc. Civ. R. 105(2)(a) again claiming Defendant met with him in Maryland.

preliminary acts to a contract in Maryland, Maryland courts could and would have personal jurisdiction over the party. See Du-Al Corp., 540 F.2d at 1232. Du-Al Corp. does not hold that Maryland courts have jurisdiction over an out-of-state party if a different in-state party did preliminary acts to a contract. Also, in Du-Al Corp., the defendant purchased and took delivery of goods in Maryland, distributed goods in Maryland, and the contractual duties of the defendant were to be performed in Maryland. Id. at 1233. As a result, these differences render Du-Al inapposite.

Plaintiff claims that the Defendant caused tortious injuries in Maryland which can serve as a basis for exerting personal jurisdiction over the Defendant in Maryland. Pl.'s Mem. 10-11. However, when a plaintiff sues an out-of-state defendant for a tort, both the injury and the causal act must occur in the forum state for that state to have personal jurisdiction over the defendant. See Zinz v. Evans and Mitchell Indus., 324 A.2d 140, 144 (Md. Ct. Spec. App. 1974); Craig v. Gen. Fin. Corp. of Ill., 504 F. Supp. 1033, 1037 (D. Md. 1980). While the Plaintiff may claim that he was injured in Maryland by receiving the invoice or learning of statements made by the head of the Moscow office, the causal acts for the alleged injuries occurred outside of Maryland. The invoice was prepared in Russia. The alleged defamatory statements were made by members of the Defendant's organization in Russia to other parties in Russia. None of the causal acts that led to Plaintiff's alleged injuries occurred in Maryland, so this Court cannot exert personal jurisdiction over Defendant.

Defendant's contacts with Maryland would not satisfy the Due Process clause. Although the contract between the Plaintiff and the Defendant technically was concluded in Maryland, such "mechanical" tests cannot serve as a basis for exerting jurisdiction over an out-of-state defendant. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985).

> If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. The court long ago rejected the notion that personal jurisdiction might turn on "mechanical" tests or "conceptualistic . . . theories of the place of contracting or of performance."

Id. (quoting Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316 (1943)). Having already decided that the other alleged actions do not provide sufficient minimum contacts for haling the Defendant into court in Maryland, the technical fact that Maryland served as the place of contracting is not a sufficient contact with Maryland for Maryland to have personal jurisdiction over the Defendant.

The Court in Burger King outlined several other factors, such as future consequences and course of dealing, to determine when a court could exert personal jurisdiction over an out-of-state defendant. See id. at 479. Here such factors would point away from Maryland and specifically towards Russia, the consequences of the contract would all be felt in Russia (whether the Defendant would have access and be able to complete adoptions involving children in Russia, and the funds necessary to run a network of adoption coordinators in Russia) and the course of dealing does not involve Maryland (simply mailing letters, emailing, and calling on the phone do not give rise to a presence in Maryland).

Plaintiff incorrectly cites Prince v. Illien Adoptions International, Ltd., 806 F. Supp. 1225, 1230 (D. Md. 1992), to support the claim that because Defendant would face a "minimal" burden in litigating the case in Maryland, this Court should have jurisdiction over the dispute. In Prince, the court found that the relative burdens of litigating the case in Maryland or Georgia weighed in favor of deciding the case in Maryland, otherwise witnesses for the plaintiff would be forced to travel to Georgia to testify whereas the defendant only had documentary evidence to move. Id. Furthermore, the situation here is not analogous to Prince because in Prince both parties were subject to the

11

jurisdiction of both Maryland and Georgia because the Interstate Compact on the Placement of Children gave either state jurisdiction. See id. In this case, there is not an agreement that would automatically give Maryland courts jurisdiction over the parties to this suit.

Finally, although a choice of law provision is not a part of the contacts analysis from International Shoe or Burger King, having a choice of law provision weighs in favor of giving jurisdiction over a case to the forum specified by the contract. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 481-82 (1985). Here, the parties have stipulated that the contract should be governed by the law of the state of Illinois, so Illinois would be a more appropriate forum to litigate this dispute.

## TRANSFER PURSUANT TO 28 U.S.C. § 1406(a) or U.S.C. § 1631

If a court lacks jurisdiction over a defendant, it must determine whether to transfer the case to another district in the United States pursuant to the authority granted under 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631. Section 1406(a) reflects a policy favoring adjudications on the merits over dismissals. See Porter v. Groat, 840 F.2d 255, 257-58 (4th Cir. 1988). In determining whether to transfer a suit, a court must perform a case-specific inquiry and analyze both the convenience and fairness of transferring the case. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-30 (1988). Although neither side has requested a transfer, considering that the contract specifies that Illinois law should be used to interpret the contract and the district court for the Northern District of Illinois would have general personal jurisdiction over Defendant,[2] this case should be transferred to the Northern District of Illinois.

---

[2] Defendant is incorporated and has its principal place of business in Illinois.

## **CONCLUSION**

For all of the aforementioned reasons, the Court will grant Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and will enter a provisional order transferring the action to the Northern District of Illinois. An order consistent with this opinion will follow.


Date:   June 14, 2006                                        /s/
                                                  Alexander Williams, Jr.
                                                  United States District Court